1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Gary Cammenga,                    )    No. CV-06-0829-PHX-MHM
                                       )
10           Plaintiff,                )    **ORDER**
                                       )
11   vs.                               )
                                       )
12                                     )
     Jo Anne B. Barnhart,              )
13   Commissioner of Social Security,  )
                                       )
14           Defendant.                )
                                       )
15   _____  )

16

17        Gary Cammenga ("Plaintiff") seeks judicial review of the Administrative Law Judge's

18   ("ALJ") decision denying her claim for disability insurance benefits and Supplemental

19   Security Income ("SSI").  42 U.S.C. §§ 405(g), 1383(c).

     **I.  Procedural History**
20
          On November 21, 2003, Plaintiff filed an application for disability insurance benefits
21
     and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42
22
     U.S.C. §§ 401-433, 1381-1383(f).  (Tr. 40-42, 179-81).  The application was denied at the
23
     initial levels and was then brought before an ALJ to be reviewed.  (Tr. 193-226).   On
24
     October 24, 2005, the ALJ determined that Plaintiff was not disabled and reaffirmed the
25
     initial decision.  (Tr. 15-20).  The Appeals Council denied any further review and the
26
     ALJ's decision became the final decision of the Commissioner of Social Security, Jo
27
     Anne Barnhart ("Defendant").  (Tr. 6-9).
28

1    On March 22, 2006, Plaintiff filed a Complaint against Defendant, seeking review of

2    the ALJ's denial of his social security benefits.  (Doc. 1).  On July 14, 2006, Defendant

3    submitted an answer to Plaintiff's Complaint.  (Doc. 8).  Plaintiff then filed a Motion for

4    Summary Judgment, along with a  Memorandum of Points and Authorities, on September

5    6, 2006.  (Docs. 10, 11).  In this Motion, Plaintiff contends that the ALJ erred in

6    disregarding the treating physician's opinion, in rejecting Plaintiff's credibility as to his

7    allegedly disabling fatigue, and in, ultimately denying the claim.  Defendant subsequently

8    filed a Response to the Motion for Summary Judgement (Doc. 13), a Cross-Motion for

9    Summary Judgment (Doc. 14), and a Memorandum in Support of the Cross-Motion for

10   Summary Judgment (Doc. 16) on October 10, 2006.  Defendant asserts that the ALJ was

11   in his right authority by refusing to acknowledge the treating doctor's opinion and for

12   rejecting Plaintiff's credibility.

13   **II. Background Facts**

14       **A.       Plaintiff's Medical History**

15    Plaintiff was treated by physician, George Sein, M.D., from December 2001 through

16   May 2004.  (Tr. 114-44).  During this time, Plaintiff was diagnosed and treated for

17   insomnia, a right shoulder strain, fatigue, gastroesophageal reflux disease, a whiplash

18   injury, and a hernia.  (Id.).  Plaintiff was also involved in an automobile accident on

19   December 17, 2003 and sustained a shoulder injury and was further diagnosed with a

20   cervical strain.  (Tr. 113).  He was prescribed medication for both of these ailments.  (Id.).

21    On February 20, 2004, Dr. Sein ordered diagnostic work on Plaintiff and further

22   confirmed moderate to severe cervical strain.  (Tr. 122).   A followup examination

23   revealed moderately severe degenerative changes to his cervical injuries.  (Tr. 168).

24       On January 22, 2004, Dr. Thomas Rusing, M.D., examined Plaintiff's hernia.  (Tr. 98,

25   99).  Dr. Rusing determined that Plaintiff had a small umbilical hernia without symptoms.

26   (Tr. 98).  Plaintiff was then treated at Yavapai Regional and received physical therapy for

27   injuries to his right neck, shoulder, and side from January to March 2004.  (Tr. 103-13).

28

1   Yavapai Regional discharged Plaintiff on March 3, 2004 and noted that Plaintiff had met
2   all of his physical therapy goals.  (Tr. 104).

3       In May 2004, Dr. Sein referred Plaintiff to Andrew Newton, M.D., after Plaintiff
4   complained of chest pains.  (Tr. 148).  Cardiac testing revealed normal results.  (Tr. 145).
5   Around this time, Plaintiff told Dr. Sein that he had retired and that he often rode a
6   bicycle for fitness purposes.  (Tr. 150).  On July 7, 2004, a non-examining State agency
7   physician scrutinized Plaintiff's existing medical records, and came to the conclusion that
8   Plaintiff's physical condition allowed him to perform "light work."  (Tr. 152, 153).   On
9   August 10, 2005,  Plaintiff saw yet another physician, Michael Aranda, D.O.  (Tr. 170).
10  Dr. Aranda diagnosed Plaintiff with cervical problems and insomnia, for which he
11  prescribed physical therapy.  (Tr. 169).

12      On August 12, 2004, Dr. Sein filled out a form report in which he assessed that
13  Plaintiff was capable of lifting up to ten pounds frequently or, alternatively, up to fifty
14  pounds occasionally.  (Tr. 174).  Dr. Sein also concluded that Plaintiff could sit for four
15  hours at a time and could stand for two hours at a time.  (Id.).  Dr. Sein then referred
16  Plaintiff to Francisco Jaume, D.O., to have his right arm examined.  (Tr. 165-68).  In
17  October 2004, Dr. Jaume diagnosed Plaintiff with "cervical spinal stenosis" and "severe
18  left foraminal stenosis", but did not prescribe any medication or other treatment because
19  Plaintiff claimed to be "feeling pretty good."  (Tr. 165).

20      **B.      Hearing Testimony**

21      On October 24, 2005, an oral hearing was held to determine Plaintiff's disability
22  status.  (Tr. 194-226).  At the hearing, Plaintiff testified that he endured neck and
23  shoulder pain, which prevented him from engaging in any physical activity.  (Tr. 205).
24  Plaintiff explained that his fatigue, coupled with the physical pain, caused him a need to
25  lay down for hours at a time and to take naps during the day.  (Tr. 199-201).  Plaintiff,
26  additionally, stated that, because of his fatigue, he could not shop for more than twenty
27  minutes and could not engage in other light activities, such as doing laundry, for more
28  than thirty minutes.  (Tr. 202-204).   Plaintiff also revealed that he was not taking any

1   prescribed medications for his physical condition, that he lived independently, and that he
2   did a majority of his household chores.  (Tr. 210-211).  Also, Plaintiff stated that he still
3   drove a automobile and that he had helped move his brother from New York to Arizona.
4   (Tr. 211-212).

5       At the hearing Linda Heiland, a vocational expert, assessed Plaintiff's medical history
6   and gave her opinion about his physical limitations and capabilities.  (Tr. 217-224).  Ms.
7   Heiland stated that Plaintiff was capable of activities that involved light work and could
8   be employed as a housekeeper, a telemarketer, or a fast food crew member.  (Tr. 219-
9   220).  She also testified that Plaintiff could engage in work as a customer service
10  representative or as a telephone clerk.  (Tr. 220).  Ms. Heiland determined, however, that
11  Plaintiff's diagnosed fatigue would cause problems with maintaining concentration and
12  memory, and that Plaintiff would, thus, have trouble working at skilled jobs due to their
13  highly cognitive nature .  (Tr. 222-224).

14      **C.      ALJ's Conclusion**

15       On December 2, 2005, the ALJ denied Plaintiff's claim for disability insurance
16  benefits and Supplemental Security Income following the five step sequential analysis.
17  (Tr. 16-20).  At step one, the ALJ found that Plaintiff had not performed substantial
18  activity since his alleged onset date of April 1, 2001.  (Tr. 16-17).  At step two, the ALJ
19  concluded that Plaintiff's neck, back, and left knee disorders constituted as severe
20  impairments within the meaning of the Social Security Act.  (Tr. 17).  At step three, the
21  ALJ found that these impairments were not severe enough to meet or equal one of the
22  impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (Id.).  At step four, the
23  ALJ determined that Plaintiff retained the residual functional capacity to perform that
24  exertional requirements of light work and, thus, was capable of work he had done in the
25  past or "other work existing in significant numbers in the national economy."  (Id.).  In
26  making this determination, the ALJ found that Plaintiff exaggerated his symptoms and
27  limitations. (Tr. 18).  The ALJ, furthermore, determined that Plaintiff's subjective
28  complaints went beyond the great weight of the evidence and were not to be fully

accepted. (Id.). The ALJ also greatly relied on Dr. Sein's conclusions that Plaintiff could perform a range of light work, that there were no additional functional limitations due to Plaintiff's fatigue, and that there was not any medically determinable impairment that could produce Plaintiff's level of fatigue. (Id.). In addition, the ALJ took into account Ms. Heiland's, the impartial vocational expert, opinion that Plaintiff could perform his past relevant work. (Tr. 19). At step five, the ALJ used Ms. Heiland's testimony to determine that Plaintiff, was capable of performing work found in significant numbers in the national economy, such as telemarketing or customer service representation. (Id.).

**III. Standard of Review**

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

> (1)   determine whether the applicant is engaged in "substantial gainful activity;"
>
> (2)   determine whether the applicant has a "medically severe impairment or combination of impairments;"
>
> (3)   determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4)   if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her relevant work;
>
> (5)   if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).

The ALJ's findings are considered legitimate if they are supported by substantial evidence. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The Court considers the record as a whole when determining whether substantial evidence supports a decision. Id  Where evidence is inconclusive or

1    "susceptible of more than one rational interpretation, it is the ALJ's conclusion which

2    must be upheld."  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

3    **IV. Discussion**

4        Plaintiff raises two issues on appeal: (1) whether the ALJ improperly misinterpreted

5    and rejected the opinion of Plaintiff's treating physician, Dr. Sein, regarding the impact of

6    Plaintiff's fatigue and (2) whether the ALJ erred in rejecting Plaintiff's credibility as to

7    the severity of his symptoms.  The Court will address these issues below.

8        **A.     ALJ's Interpretation and Rejection of Dr. Sein's Opinion**

9        Plaintiff asserts that, since the ALJ gave Dr. Sein's "medical source statement

10   substantial weight," the ALJ improperly interpreted and rejected Dr. Sein's opinion as to

11   Plaintiff's fatigue.  (Doc. 10, p.3).  The ALJ, however, is not required to accept

12   everything in a physician's report as true in order to give the report substantial weight.

13   See Magallanes v. Browen, 881 F.2d 747, 753 (9th Cir. 1989) (stating that "[i]t is not

14   necessary to agree with everything an expert witness says in order to hold that his

15   testimony contains substantial evidence").  The ALJ is allowed to discard a treating

16   physician's opinion if it is based on subjective symptoms that the ALJ has already

17   properly rejected.  See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1463-64

18   (9th Cir. 1995).  Symptoms dealing with pain, such as fatigue are subjective and cannot

19   be determined objectively.  See Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1985).

20   Subjective symptoms are evaluated based, in large part, on the plaintiff's credibility.  See

21   Flaten, 44 F.3d 1463-64.

22       Here, Plaintiff's allegation of fatigue was a subjective symptom and the ALJ,

23   accordingly, determined the sincerity of that allegation by evaluating Plaintiff's

24   credibility.  (Tr. 18).  The ALJ concluded that Plaintiff did not suffer from moderately

25   severe fatigue and then, consequently, rejected Dr. Sein's opinion as to the subjective

26   symptom.  (Id.)  Under the 9th Circuit's standards, the ALJ was well within his authority

27   to partially reject Dr. Sein's opinion while giving it "substantial weight" upon

28   consideration.  Thus, the ALJ's finding on this point must be upheld.

1

**B.      The ALJ's Rejection of Plaintiff's Credibility**

2      Plaintiff contends that the ALJ did not sufficiently justify his rejection of Plaintiff's

3   credibility pertaining to his symptoms of fatigue.  (Doc. 10, p. 4).  In order to reject

4   allegations of subjective symptoms, an ALJ must give specific and convincing reasons for

5   the rejection.  See Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002).  In his

6   reasoning, an ALJ may evaluate a plaintiff's "reputation for truthfulness, inconsistencies

7   either in his testimony or between his testimony and his conduct, his daily activities, his

8   work record, and testimony from physicians and third parties concerning the nature,

9   severity, and effect of the symptoms of which he complains."  Light v. Social Security

10  Administration, 119 F.3d 789, 792 (9th Cir. 1997).  An ALJ may further consider the

11  "precipitating and aggravating factors" of the pain; the "type, dosage, effectiveness, and

12  adverse side-effects" of any prescribed medication for the pain; and "treatment, other than

13  medication."  Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991).

14     Here, the ALJ sufficiently gave substantial reasoning for his rejection of Plaintiff's

15  credibility concerning his allegedly disabling fatigue.  First, the ALJ considered Dr.

16  Sein's medical findings, in which the doctor could not specifically identify a medical

17  explanation for Plaintiff's fatigue.  (Tr. 18).  The ALJ also relied on Dr. Sein's opinion

18  that Plaintiff still retained the ability to perform a range of light work.  (Id.).  Next, the

19  ALJ took into account Plaintiff's daily activities.  (Id.).  It was noted at the hearing that

20  Plaintiff rode a bicycle, did household chores, drove a car, and helped his brother move

21  across the country.  (Tr. 210-212).  The ALJ then considered the fact that Plaintiff was

22  not taking any prescribed medication or was otherwise engaged in any alternative forms

23  of therapy.  (Tr. 18).  Finally, the ALJ contemplated the fact that Plaintiff had told one of

24  his physicians that he was "feeling pretty good."  (Id.).  All of these considerations are

25  valid reasons for determining credibility under the 9th Circuit's standards.  As such, the

26  ALJ's finding that Plaintiff's allegation of disabling fatigue as not credible is properly

27  supported by substantial reasoning and must be upheld.

28  **V.  Conclusion**

1    The Court finds that the ALJ adequately complied with his obligation in evaluating

2    and rejecting Plaintiff's treating physician's opinion and Plaintiff's credibility as to the

3    severity of his fatigue.

4    **Accordingly,**

5    **IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment.

6    (Doc. 10).

7    **IT IS FURTHER ORDERED** granting Defendant's Motion for Summary

8    Judgment.  (Doc. 14).

9    **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

10   DATED this 31st day of August, 2007.

11

12

13

14

15

16   _____
     Mary H. Murgula
17   United States District Judge

18

19

20

21

22

23

24

25

26

27

28